J-S33016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TEQUILA HELEN JONES, | |
| Appellant | No. 1054 WDA 2015 |

Appeal from the Judgment of Sentence May 14, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013357-2014

BEFORE:  GANTMAN, P.J., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 19, 2016**

Appellant, Tequila Helen Jones, appeals from the judgment of sentence entered on May 14, 2015, as made final by the denial of a post-sentence motion on June 10, 2015, following her bench trial conviction for receiving stolen property,[1] possessing a firearm without a license,[2] and three motor vehicle summary offenses.[3]  Upon reconsideration, we remand this case for the preparation of a trial court opinion.

The trial court summarized the facts of this case as follows:

> At trial, Homestead Police Officer James Wintruba testified
> that on September 20, 2014, at approximately 2:00 a.m.,

---

[1]  18 Pa.C.S.A. § 3925.

[2] 18 Pa.C.S.A. § 6106(a).

[3]  Appellant does not challenge her summary offense convictions on appeal.

*Former Justice specially assigned to the Superior Court.

he observed a vehicle traveling which he described as suspicious in nature. Officer Wintruba recognized the car as belonging to Appellant, and believed that Appellant did not possess a valid license and that the vehicle she drove was not registered or insured. He passed the vehicle and observed the driver, Appellant, whom he recognized as the owner of the vehicle. The [o]fficer ran the registration plate as he passed the vehicle and it came back cancelled for insurance reasons. Before he was able to initiate a traffic stop, he was called away to another matter. Officer Wintruba testified that he observed the same vehicle later that evening, and attempted to initiate a traffic stop. Appellant's vehicle continued for three blocks before stopping. The [o]fficer observed Appellant, now in the passenger seat, and an unknown male in the driver's seat (later identified as Frank Key[e]s). The [o]fficer observed Appellant turning left and right, disappearing behind the seat and then reappearing. Officer Wintruba suspected Appellant had placed something on the rear floor.

Upon the [o]fficer's approach to the vehicle, Appellant continued to move frantically. The driver, Keyes, appeared to be intoxicated. Keyes' eyes were squinted, his movements were lethargic and he reeked of alcohol. Corporal Jeff Luptak arrived as backup shortly after the traffic stop and took an observation point while Appellant searched her glove box for the registration. While Officer Wintruba was speaking with Keyes, Corporal Luptak shouted, "Gun, gun. There is a gun in the car." Appellant and Keyes were quickly removed from the vehicle. Officer Wintruba observed a small black semiautomatic weapon on the passenger seat toward the center of the vehicle, the area from which Appellant was removed. Officer Wintruba later clarified that the gun was recovered from the area under Appellant's left thigh. Neither Appellant nor Keyes had a valid license to carry a firearm. Officer Wintruba testified that the gun was owned by Patrick Schmidt who had reported it as stolen. One fingerprint was recovered on the gun but it did not match Appellant or Keyes. Appellant made several statements at the scene that she was unaware of and quite surprised by the presence of a gun in the car. Keyes stated he switched places with Appellant because he felt she was too drunk to drive him home.

- 2 -

Corporal Luptak testified that when he arrived at the scene, he did not initially observe the firearm. He testified that he was at the passenger side window when he saw the handgun under Appellant's leg as Appellant moved around inside the vehicle. Corporal Luptak testified that he saw the gun on the passenger seat with the barrel facing the driver's side. He alerted the other [o]fficer and removed Appellant from the vehicle.

Schmidt testified that he bought a 9mm caliber Kel-Tee pistol with a serial number S2526 at a gun show in January 2014. Schmidt identified the gun that was recovered from Appellant's car as the same weapon he purchased at the gun show. He testified that the gun had been stolen from him and that he had not given Appellant or Keyes permission to possess the firearm.

Trial Court Opinion, 1/15/2016, at 3-4 (record citations omitted).

The trial court held a bench trial on May 14, 2015. At its conclusion, the trial court convicted Appellant of the aforementioned crimes. Appellant waived her right to the preparation of a pre-sentence investigation report and proceeded directly to sentencing. The trial court sentenced Appellant to three years of probation for possession of a firearm (with the first year electronically monitored) and a concurrent term of three years' probation for receiving stolen property. The summary offenses resulted in a fine, but no further penalties. This timely appeal resulted.[4]

_____

[4] Appellant filed a post-sentence motion *nunc pro tunc* on June 3, 2015, arguing the convictions were against the weight of the evidence presented. The trial court expressly accepted the late filing, but denied relief on the merits by order entered on June 10, 2015. **See Commonwealth v. Dreves**, 839 A.2d 1122, 1128 (Pa. Super. 2003) (If the trial court expressly grants *nunc pro tunc* post-sentence relief, the time for filing an appeal is tolled). On July 10, 2015, Appellant filed a notice of appeal. By order filed

*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issue for our review:

I.  Were the verdicts of guilty for receiving stolen property and possession of a firearm without a license [] rendered against the weight of the evidence presented?

Appellant's Brief at 4.

Appellant claims that her convictions for receiving stolen property and possessing a firearm without a license were against the weight of the evidence presented by the Commonwealth. Appellant claims, "the testifying officers stated [she] was highly intoxicated [and] seemed shocked when told there was a gun present." *Id.* at 11. Appellant further avers that the fingerprint found on the firearm excluded her and that Mr. Keyes "admitted that he sat in the passenger's seat where the gun was found just prior to the traffic stop." *Id.* Appellant claims that the Commonwealth did not prove she exercised conscious dominion over the firearm because "Officer Wintruba specifically testified that the gun was **not** where he saw [Appellant] leaning forward, and was within Mr. Keyes' arm-length." *Id.* at

_(Footnote Continued)_ ─────────────────

on July 16, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After the grant of an extension to obtain the necessary trial transcripts, Appellant complied timely on September 22, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 15, 2016. On May 27, 2016, this panel filed a memorandum reversing Appellant's conviction for receiving stolen property, vacating the judgment of sentence for that offense, and affirming her remaining convictions and sentence in all other respects. On July 11, 2016, we granted the Commonwealth's motion for reconsideration. Accordingly, we will again review Appellant's initial claim.

14 (emphasis in original). Thus, based upon the totality of circumstances, Appellant suggests, "Mr. Keyes placed the gun under her leg immediately following the stop." *Id.* at 18. Although Appellant concedes she had the power to control the firearm, she maintains, under the circumstances established at trial, the determination that she had the intent to exercise control over the weapon was against the weight of the evidence. *Id.* at 16. Finally, Appellant claims that because she did not know the firearm was under her leg, she could not have known it was stolen. *Id.* at 18-19.

Our Supreme Court has set forth our standard of review as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial

judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations, quotations, and emphasis omitted).

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015). "Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is

against the weight of the evidence." ***Commonwealth v. Gibson***, 720 A.2d 473, 480 (Pa. 1998).

Here, the trial court conflated Appellant's weight of the evidence claim with a challenge to the sufficiency of the evidence. In her Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Appellant averred:

> The verdicts of guilt for [r]eceiving [s]tolen [p]roperty and [p]ossession of a [f]irearm [n]ot to be [c]arried [w]ithout a [l]icense **were against the weight of the evidence**, **and shock one's sense of justice**. […] Here, where the investigating officers acknowledge her surprise at the presence of the weapon, [] Appellant's fingerprints were not found on the gun after testing, and no evidence was presented indicting she knew, or had reason to have known, the weapon was stolen, the resulting verdicts **shock one's sense of justice** and fairness.

Rule 1925(b) Statement, 9/22/2015, at 2 (emphasis added).

Thereafter, in its Rule 1925(a) opinion, the trial court stated, "Appellant alleges that the evidence was insufficient to establish guilt beyond a reasonable doubt on the [r]eceiving [s]tolen [p]roperty and [p]ossession of a [f]irearm [n]ot to be [c]arried [w]ithout a [l]icense counts." Trial Court Opinion, 1/15/2016, at 5. The trial court then set forth the standard of review for a challenge to the sufficiency of the evidence and analyzed Appellant's claims as such. ***Id.*** However, it is clear that Appellant was challenging the weight, not sufficiency of the evidence. In assessing the weight of the evidence, "[t]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny

justice." **Clay**, 64 A.3d at 1055. We cannot decide the underlying question of whether the verdict is against the weight of the evidence. **Gibson**, 720 A.2d at 480. The trial court must first assess the weight of the evidence as presented and we may then review the trial court's exercise of discretion in ruling on that claim. **See Clay**, **supra**. Hence, we are constrained to remand this case to the trial court for a period not to exceed 60 days for the preparation of an opinion pursuant to Pa.R.A.P. 1925(a) addressing Appellant's weight of the evidence claim.

Case remanded for the preparation of an opinion consistent with this memorandum. Jurisdiction retained.

Justice Fitzgerald joins this memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2016